IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Melissa Brown, | ) | Case No. 24 CV 2140 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Honorable LaShonda A. Hunt |
| | ) | |
| City of Chicago, Chicago Police Officers Arauz | ) | Magistrate Daniel P. McLaughlin |
| #4101, Lopez #11943, Rodriguez #16254 | ) | |
| Miranda #19058, and Astorga #14757, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

**THIRD AMENDMEND CIVIL COMPLAINT**

NOW COMES Plaintiff, MELISSA BROWN, by and through her attorneys, Bakos & Maisuria Law Group, complaining against Defendants as follows:

**INTRODUCTION**

1. This action, arising out of the unlawful arrest and detention of Plaintiff Melissa Brown, is brought pursuant to 42 U.S.C. § 1983 to address deprivations of Ms. Brown's rights under the Constitution of the United States.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the district.

**THE PARTIES**

3. The Plaintiff, Melissa Brown, resides in Indiana.

4. Defendant Chicago Police Officers Arauz, Lopez, Rodriguez, Miranda and Astorga were at all relevant times duly appointed police officers of the City of Chicago acting within the

scope of their employment and under color of law. They are being sued in their individual capacities.

5. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of the Defendant Chicago Police Officers.

**FACTS**

6. On or about January 19, 2024, at approximately 4:45 p.m., Plaintiff Melissa Brown and her passenger, Reginald Reed, were pulled over by one or several of the Individual Defendants in an unmarked vehicle near the intersection of 55th Street and Damen Avenue in Chicago, Illinois.

7. One of the Defendants informed Plaintiff Brown that the reason why she was pulled over was because her rear license plate was obstructed.

8. Plaintiff Brown's rear license plate was not obstructed from view in any way at the time she was pulled over.

9. Shortly after obtaining Plaintiff Brown's valid Indiana driver's license and proof of insurance, of the Defendant Officers asked Ms. Brown to consent to a search of her vehicle.

10. Ms. Brown did not consent to the search. Instead, Ms. Brown asked for a supervisor to come to the scene.

11. One of the Defendants informed Ms. Brown that they would contact a supervisor and ordered Brown to wait in the vehicle with Mr. Reed until the supervisor arrived.

12. In the interim, several Defendants continued to ask Brown for consent to search her vehicle stating something to the effect of, "If you have nothing to hide, why won't you let us search?" Again, Brown refused to consent to the search.

13. As time went by, the supervisor did not arrive on scene and the officers did not relent in their repeated requests to search Ms. Brown's vehicle.

14. Finally, exasperated and coerced by the Defendants to believe that she had no other option but to allow the officers to search the vehicle in order to be released and free to leave the scene, Brown finally told the officers that they could search the vehicle.

15. Ms. Brown was not offered and did not sign any form or other documentation evincing her consent to allow the officers to search the vehicle.

16. Before exiting the vehicle, Brown informed the officers that she had a valid Indiana conceal carry license, that she had a firearm in the vehicle and that the firearm was her lawful property.

17. Upon request, Brown proceeded to provide the officers with her valid Indiana conceal and carry license.

18. At Plaintiff's request, one of the Defendant Officers removed Brown's firearm from her holster.

19. One or more of the Defendant Officers searched Ms. Brown's vehicle, finding no contraband of any kind.

20. Shortly after, the Defendants informed Ms. Brown that she was free to leave. The firearm was left in the vehicle by the officers for Ms. Brown to take with her.

21. During the interaction, Ms. Brown then asked the officers for their names and badge numbers.

22. In response to this inquiry, one of the officers said something to the effect of, "Oh, you want to make this difficult?"

23. Brown responded by once again requesting the Defendants' name and badge number.

24. Visibly annoyed by Ms. Brown's inquiry, the officer referenced in paragraph 21 above, arrested Ms. Brown without probable cause.

25. Ms. Brown was falsely charged with felony aggravated unlawful use of a weapon in violation of 720 ILCS 5.0/24-1.6-A-1.

26. Illinois law permits out-of-state residents who hold a valid conceal carry license from another state to carry a concealed firearm within a vehicle traveling through Illinois.

27. Ms. Brown did not exit her vehicle with the firearm at any time while in the state of Illinois.

28. No Defendant observed Ms. Brown exit her vehicle with the firearm at any time while in the state of Illinois.

29. The Defendants also issued a traffic ticket to Ms. Brown for violating statute 625 ILCS 5.0/3-413-B.

30. 625 ILCS 5.0/3-413-B requires that vehicles registered in the state of Illinois display a license plate both on the front and the rear of the vehicle.

31. Ms. Brown's vehicle did not have a front license plate affixed to it.

32. However, Ms. Brown's vehicle was not registered in the state of Illinois. It was registered in the state of Indiana. This information was known to the Defendants as Ms. Brown's license plates are Indiana-issued license plates bearing Indiana's state name and state design.

33. Indiana law does not require a front license plate.

34. Ms. Brown was held in police custody following her arrest through approximately 6:00pm the following evening.

35. At the bond hearing on the morning of January 20, 2024, prior to her release, Ms. Brown's

felony charge and traffic ticket were dismissed by the State's Attorney in a manner indicative of innocence.

36. Ms. Brown's firearm was not returned to her.

37. The supervisor requested by Ms. Brown never arrived on-scene and upon information and belief, the Defendant Officers never requested that the supervisor come to the scene.

38. As a result of the foregoing, Ms. Brown suffered emotional distress, embarrassment, humiliation, lost wages, loss of liberty, loss of dignity, loss of property, legal fees and towing expenses.

**COUNT I**
**1983 FOURTH AMENDMENT**
**UNLAWFUL SEARCH & SEIZURE**
**(Against All Individual Defendants)**

39. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

40. At all times relevant herein, the Plaintiff was vested with, possessed, and was guaranteed by the Fourth Amendment of the United States Constitution the right to be free from an unlawful search.

41. Defendant Chicago Police Officers, acting under the color of law, caused Ms. Brown to be seized when the officers pulled her over in her vehicle.

42. Defendant Chicago Police Officers did not have probable cause to believe that Ms. Brown had committed a crime when they pulled her over in her vehicle.

43. Defendant Chicago Police Officers did not have reasonable suspicion to believe that Ms. Brown had or was about to commit a crime when they pulled her over in her vehicle.

44. Defendant Chicago Police Officers had no lawful justification for stopping Ms. Brown's vehicle.

45. Defendant Chicago Police Officers, acting under the color of law, caused Ms. Brown to be

seized when the officers arrested Ms. Brown for unlawful use of a weapon.

46. Defendant Chicago Police Officers did not have probable cause to arrest Ms. Brown with any crime on the date of the incident.

47. Defendant Chicago Police Officers did not have probable cause or other legal justification to search Plaintiff Brown's vehicle.

48. Plaintiff did not voluntarily or freely consent to the search of her vehicle, but only agreed to the search because the Defendants would not allow Ms. Brown to leave the scene after she repeatedly declined to allow the officers to search the vehicle several times and requested a supervisor.

49. In searching Plaintiff's vehicle without voluntary consent and without probable cause, Defendant Chicago Police Officers violated Plaintiff's Fourth Amendment rights.

50. Defendant Chicago Police Officers, acting under the color of law, caused Ms. Brown's property to be seized when the officers took custody of and never returned Ms. Brown's lawfully owned firearm.

51. Defendant Chicago Police Officers did not have probable cause or other legal justification to seize Plaintiff Brown's firearm.

52. The foregoing actions constitute deliberate indifference to Ms. Brown's rights under the United States Constitution in violation of the Fourth Amendment.

53. Defendants' conduct was objectively unreasonable and undertaken intentionally with willful and wanton indifference to Ms. Brown's constitutional rights.

54. As a direct and proximate cause of the Defendants' conduct, Ms. Brown suffered emotional distress, embarrassment, humiliation, lost wages, loss of liberty, loss of dignity, loss of property, legal fees, and towing expenses.

**WHEREFORE**, the Plaintiff prays for judgment against Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

## COUNT II
## FIRST AMENDMENT RETALIATION
### (Against Defendant Astorga)

55. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

56. The First Amendment of the United States Constitution prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.

57. Here, Defendant Astorga had no probable cause to arrest Plaintiff.

58. Following the investigation on-scene, Defendant Astorga told the Plaintiff that she was free to leave and informed her that her firearm was put back underneath the driver's seat of her vehicle.

59. Plaintiff responded by saying, "I need to get name and badge numbers." Immediately thereafter, Defendant Astorga said, "I got a better one, sweetheart" and then proceeded to place the Plaintiff in handcuffs and arrested her.

60. Plaintiff's request f or name and badge numbers is constitutionally protected speech.

61. By arresting the Plaintiff as a form of punishment for asking for the officers' name and badge numbers, the Plaintiff suffered a deprivation likely to deter free speech.

62. Plaintiff's request for the officers' name and badge numbers was the but-for cause of Defendant Astorga's conduct in arresting Plaintiff.

63. As a result of Defendant Astorga's actions, Plaintiff sustained injuries including without limitation, emotional distress, humiliation, loss of liberty, mental anguish and monetary damages.

64. The misconduct undertaken by Defendant Astorga was within the scope of his employment and under color of law.

**WHEREFORE**, the Plaintiff prays for judgment against Defendant Astorga, for an award of reasonable compensatory and punitive damages, plus attorneys' fees and costs.

## COUNT III
## MALICIOUS PROSECUTION
### (Against All Individual Defendants)

65. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

66. Defendants maliciously caused several criminal charges to be commenced and continued against Plaintiff by creating false and incomplete police reports and swearing to false criminal charges.

67. There was no probable cause for the institution of each of the criminal charges lodged against Plaintiff.

68. All the criminal charges against Plaintiff were disposed of in a manner indicative of Plaintiff's innocence.

69. Plaintiff sustained injuries including without limitation, emotional distress, humiliation, loss of liberty, mental anguish and monetary damages.

70. The misconduct was undertaken by the Defendants was within the scope of their employment and under color of law.

**WHEREFORE**, the Plaintiff prays for judgment against Defendants, jointly and severally, for an award of reasonable compensatory and punitive damages, plus costs.

## COUNT IV
## INDEMNIFICATION
### (Against Defendant City of Chicago)

71. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

72. At all relevant times, Defendant City of Chicago was the employer of the individual

Chicago Police Officer Defendants.

73. The individual City of Chicago Police Officer Defendants committed the acts alleged above under the color of law and within the scope of their employment as employees of the City of Chicago.

74. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liability within the scope of their employment activities.

75. As a proximate cause of the unlawful acts of the individual Defendants, which occurred within the scope of their employment, Plaintiff was injured.

**WHEREFORE,** should any of the individual Chicago Police Officer Defendants be found liable on one or more of the federal claims set forth above, Plaintiff demands, pursuant to 745 ILCS 10/9-102, that Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against said individual Defendant(s), plus attorneys' fees and costs awarded and such other and additional relief that this Court deems equitable and just.

## COUNT V
## RESPONDEAT SUPERIOR
### (Against Defendant City of Chicago)

76. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

77. In committing the acts alleged in the preceding paragraphs, the individual City of Chicago Police Officer Defendants were agents of the City of Chicago and were acting at all relevant times within the scope of their employment and under color of law.

78. Defendant City of Chicago is liable as principal for all torts committed by their respective agents.

**WHEREFORE,** should any of the individual Defendants be found liable on one or more of the federal claims set forth above, Plaintiff demands that, pursuant to *respondeat superior*,

Defendant City of Chicago be found liable for any compensatory judgment Plaintiff obtains against the Defendants they employ, as well as costs.

## JURY DEMAND

Plaintiff requests trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Abby D. Bakos
Abby D. Bakos, Esq.

/s/ Ronak Maisuria
Ronak Maisuria, Esq

Bakos & Maisuria Law Group, LLC
1776A S, Naperville Rd., Suite 100
Wheaton, Illinois 60189
833.800.2654
abby@bakosmaisuria.com
www.bakosmaisuria.com